UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| GAYLA LONG | ) | |
|---|---|---|
| | ) | |
| V. | ) | NO. 2:07-CV-9 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

This matter has been referred to the United States Magistrate Judge by order of the District Judge [Doc. 19] for a report and recommendation with respect to the Motions for Summary Judgment of the plaintiff and defendant Commissioner [Docs. 15 and 17].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988).

Plaintiff is seeking judicial review of the Commissioner's final decision denying her

applications for disability insurance benefits and supplemental security income filed on July 30, 2002. Plaintiff alleged a disability onset date of July 19, 2002 due to musculoskeletal and bladder problems. In the course of processing her applications, it became obvious that she also suffered from a severe mental impairment.

On November 17, 2003, the Administrative Law Judge ("ALJ") issued a decision finding that the plaintiff was not disabled. On February 17, 2005, the Appeals Council found that the medical evidence showed that the plaintiff had various mental impairments, and remanded the case to the ALJ for further proceedings.

Plaintiff was 44 years of age at the time of her last hearing before the ALJ. She had past relevant work experience as a fast food cook and as a cashier. She had a high school education, having earned her GED.

Although the plaintiff originally applied for benefits based upon her physical infirmities alone, her only allegation of error in her brief is that the ALJ erred in his evaluation of the plaintiff's mental impairments and their effect on her ability to do work. Accordingly, this report and recommendation will focus solely on the plaintiff's mental impairments. However, the Court does feel that there is substantial evidence to support the ALJ's determinations regarding the plaintiff's physical capabilities as set forth in his hearing decision [Tr. 18-24].

The first reference to plaintiff's mental condition appears in a treatment note dated June 13, 2003, from the Rural Health Services Consortium, Inc. [Tr. 227] It describes plaintiff as complaining of "anxiety and pain features / depression." The first mention in the record of dedicated mental health treatment by a mental health professional is an intake

2

report from Frontier Health dated August 18, 2003 [Tr. 288]. That intake report states that plaintiff "is a recent d/c from Indian Path, where she was treated for depression and anxiety." However, there are no treatment records regarding any hospitalization around August 18, 2003, from Indian Path. Plaintiff also did not testify regarding any such psychiatric hospitalization. The Court is confident that such an important piece of evidence as a psychiatric hospitalization in a case such as this would not have been allowed to slip through the proverbial crack by plaintiff's capable counsel. At any rate, the records were never submitted as part of her claim for benefits. Plaintiff reported a great deal of financial strain and family problems. The intake report diagnosed major depression and a panic disorder. She did not appear for a follow-up visit on September 18, 2003 [Tr. 287] or October 20th [Tr. 350].

On December 22, 2003, plaintiff did appear for her visit. This was approximately one month after the first ALJ decision denying her benefits. It was also the beginning of her relationship with Sandra Gray, her treating social worker. The plaintiff stated she had not appeared for her prior scheduled sessions due to panic attacks and fear of having panic attacks while driving. Her family was unsupportive of her seeking mental health treatment. Her mother told the plaintiff that having depression was a "sign of sin." Ms. Gray noted however that the plaintiff was oriented times 3 and her eye contact was good. She was dysphoric and tearful at times during the session. [Tr. 349]. Plaintiff saw Ms. Gray again on January 8, 2004. She reported the holidays had gone smoothly and that she had not had any panic attacks during the holidays. She had followed Ms. Gray's earlier advice and was doing something for herself each week, such as watching a movie. Her family remained

3

unsupportive. Her mother sat around reading the Bible all day. Her father said plaintiff was "bad seed." Plaintiff complained of problems sleeping and nightmares. Plaintiff was scheduled to return in 3 weeks. [Tr. 348].

On January 20, 2004, plaintiff was seen by Dr. Nizamuddin Khaja, the staff psychiatrist at Watauga Behavioral Health services [Tr. 346-47]. Plaintiff complained of panic attacks, mood swings and depression. Dr. Khaja noted that the plaintiff had been treated on an outpatient basis at Indian Path the previous year by a Dr. Fizzell. Dr. Khaja diagnosed major depression, severe and recurrent; panic disorder without agoraphobia; dependent personality traits, and a Global Assessment of Functioning ("GAF") of 40. He started her on Paxil for depression and panic attacks and encouraged her to continue therapy with Ms. Gray.

Plaintiff was late for her next visit on January 28, 2004, with Ms. Gray due to a panic attack. She stated she was "worrying all the time." She reported that Paxil seemed to make her more anxious and jumpy. Plaintiff complained of having a panic attack anytime she left her house by herself. She complained of being sexually and physically abused by her husband. She said she felt better when she stayed busy [Tr. 345-46]. Her next visit with Ms. Gray was February 18, 2004 [Tr. 343]. Plaintiff stated that she had no panic attacks since the last therapy session. She complained about her sexual relations with her husband. She was encouraged to open up with him more about her needs. Her eye contact was good. Her mood was "mildly anxious and affect was mood congruent." She was not described as being tearful. [Tr. 343]. On March 10, April 5, April 19 and April 28, 2004, plaintiff did not keep her appointment with Ms. Gray. [Tr. 338-39, 341-42].

4

On April 6, she saw Dr. Khaja again [Tr. 340]. Plaintiff told Dr. Khaja that her mood had improved. She was sleeping better with a decrease in panic attacks. She had stopped having nightmares. She was babysitting for her granddaughter. She denied problems with her medications. The plaintiff wanted to continue with her medications because they were helping. Mental status exam was "definitely better than last visit." She was given a prescription for Trileptal for mood swings, and increased dosage of Paxil, and Vistaril for her insomnia. She was to return in 3 months.

Plaintiff returned to see Ms. Gray on May 20, 2004. She stated that she had been grouchy and feeling stressed. She was keeping her 2 year old granddaughter. She reported about 2 panic attacks a week, usually while driving. Ms. Gray stated that the plaintiff's "mood was within normal limits and affect was pleasant." Also plaintiff stated her medications were working. Ms. Gray reported that plaintiff was "more relaxed and happy than in other sessions." [Tr. 337]. This improvement continued, according the next note from Ms. Gray dated June 17, 2004. Plaintiff stated she had "not been real bad lately" and that she was having only 2 panic attacks a month. Plaintiff was to return July 9th. [Tr. 336].

On July 1, 2004, she returned to see Dr. Khaja. He stated her mood swings had decreased. She was less irritable and the intensity and frequency of her panic attacks had decreased. Her mood was "better." Her affect was appropriate and her though process was logical, coherent and goal directed. There were no psychotic symptoms and her judgment and insight were fair. He discontinued her Vistaril and added Ambien to her medications for her insomnia. [Tr. 335].

Plaintiff returned to Ms. Gray on July 9th. She "reported things were going well." [Tr.

334]. She did not keep her August appointment with Ms. Gray and apparently never saw her again. On November 19, 2004, Ms. Gray completed a mental assessment. She found the plaintiff had a good ability to follow work rules. She had a fair ability to relate to co-workers and deal with the public, interact with supervisors, and maintain concentration and attention. She had a "poor/none" ability to use judgment with the public, deal with work stresses and to function independently. Ms. Gray opined plaintiff had a fair ability to understand, remember and carry out simple job instructions, but a "poor/none" ability to do the same with detailed or complex job instructions. She had a good ability to maintain person appearance, a fair ability to behave in an emotionally stable manner, and "poor/none" to relate predictably in social situations and to demonstrate reliability. [Tr. 380-81].

On May 15, 2005, plaintiff underwent a psychological evaluation by Art Stair, MA, under the direction of Dr. Charleton Stanley, a licensed psychologist. Plaintiff reported she was still taking her medications prescribed by Dr. Khaja. She advised that she "was seeing Sandra Gray" although there are no records of visits after July, 2004. Dr. Stanley and Mr. Stair opined after their examination that the plaintiff was "fully capable of understanding simple information or directions with the ability to put it to full use in a vocational setting." Her ability to comprehend and implement multi-step complex instructions was considered adequate. Her ability to maintain persistence and concentration for a full work day was at most "moderately impaired." Her social relationships were moderately impaired. Her GAF was "approximately 58." [Tr. 382-86]. A mental assessment form was completed [Tr. 388-90]. All of her mental abilities were at least "fair" ("ability to function in this area is satisfactory") except for her abilities to deal with work stresses and to relate predictably in

social situations which were "fair to poor." "Poor" is defined as "ability to function in this area is seriously limited but not precluded."

At the administrative hearing, Dr. Norman Hankins was called as a vocational expert. The ALJ asked Dr. Hankins to consider a person of the plaintiff's age, education and past relevant work. He asked to consider that the person could do medium and light work with the mental limitations noted in the report of Dr. Stanley and Mr. Stair [Tr. 448]. Dr. Hankins opined that the plaintiff could perform jobs as a cleaner, maid, janitor, laundry worker, garment folder, hanger, kitchen worker, cook, salad bar attendant, and dish washer. In Tennessee there would be 50,000 jobs at the medium level and between 60,000 and 70,000 at the light level. [Tr. 449-50]. If limited to the extent set forth in the evaluation of Ms. Gray, there would be no jobs. [Tr. 450]. On cross-examination, Dr. Hankins stated that if the plaintiff had a GAF of 40, as opined by Dr. Khaja on January 20, 2004, there would be no jobs she could perform [Tr. 452].

In his hearing decision, the ALJ found, based upon Dr. Hankins testimony, that she could return to her past relevant work as a fast food worker. Also, the ALJ found that Dr. Hankins had identified a significant number of jobs which the plaintiff could perform in the local economy. Accordingly, she was found to be not disabled. [Tr. 18-24].

Plaintiff asserts that the ALJ did not properly evaluate the severity of her mental impairments and how they affected her ability to work. Plaintiff's argument is made on two fronts. She asserts that the estimated GAF of 40 found by Dr. Khaja in January of 2004 should be determinative of her disability due to his status as a treating source. She also states that the evaluation of Ms. Gray, as plaintiff's treating therapist, should trump the consultative

7

assessment of Dr. Stanley and Mr. Stair.

Normally, and unquestionably, the well-supported opinion of a treating source should be given greater weight than an equally well-supported opinion of a non-treating source. However, the opinion of Dr. Khaja is not "equally well-supported" *vis a vis* the consultative opinion. Dr. Khaja made his assessment of the plaintiff's GAF on July 9, 2004, before he had commenced to treat her with medications for her various complaints and after only one therapy session with Ms. Gray. Both his records and those of Ms. Gray show that the plaintiff made substantial improvement over the next several months. When the consultative evaluation was performed in May of 2005, it was a year and a half since Dr. Khaja began to treat plaintiff, and 10 months since the last time he saw her in July, 2004. With the improvement in plaintiff's mental condition well documented in the records of her treating psychiatrist and therapist in the intervening time, the Court is of the opinion that the ALJ could rely upon the evaluation and assessment of the consultative source as substantial evidence of the effects of the plaintiff's non-exertional impairment on her ability to work and her improved GAF.

With regards to Ms. Gray's evaluation, while the Court has no doubt that she has done good work with the plaintiff and has helped improve her mental functioning, the ALJ and Commissioner are correct that a social worker is not an acceptable medical source under the applicable regulations or Sixth Circuit case law. *See*, *Boyett v. Apfel*, 8 Fed. Appx. 429, at pg. 4 (6th Cir. 2001) and 20 C.F.R. § 404.1527(d). In any event, her treatment notes indicate substantial improvement in the plaintiff's mental condition.

It is the opinion of the Court that there is substantial evidence to support the ALJ's

findings in all respects. It is accordingly recommended that the plaintiff's Motion for Summary Judgment [Doc. 15] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 17] be GRANTED.[1]

Respectfully submitted:

   s/ Dennis H. Inman   
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 198l); 28 U.S.C. § 636(b)(1)(B) and (C).